In re Complaint as to the Conduct of
WILLIAM P. MUMFORD, *Accused.*
(No. 1367)

In re Complaint as to the Conduct of
HALE G. THOMPSON, *Accused.*
(No. 1371)
(SC 25821)

591 P2d 1377

Don G. Swink, Portland, argued the cause and filed a brief for the accuseds.

Michael C. McClinton, Salem, argued the cause for the Oregon State Bar. With him on the brief was J. Philip Parks, Salem.

PER CURIAM.

## PER CURIAM.

This is a proceeding brought by the Oregon State Bar against two of its members, who are partners, charging them with a conflict of interest.

The accuseds represented a husband in a divorce case and in making a settlement with his wife. The settlement agreement, which was incorporated in the divorce decree, provided that the husband pay the wife $40,000 in installments of $330 a month over a period of approximately ten years. Thereafter, during the ten-year period, the wife remarried and then died. Immediately prior to her death, she assigned her interest under the agreement to her then husband. At the request of the widower, the accuseds undertook to collect from their former client the payments under the settlement that had been negotiated while they represented him. The accuseds took judgment against him in the original divorce case in which they had represented him and levied execution upon his assets for the alleged accumulated overdue payments. Some of the executions were levied in the face of a contention by their former client that under the agreement the payments were to terminate upon the death of his former wife.[1]

On the basis of the above facts, which are not in dispute, the Trial Board found the accuseds not guilty of unethical conduct. The Disciplinary Review Board found the accuseds guilty of unethical conduct and recommended a reprimand.

---

[1] The only asset of the marriage which was of any considerable worth was a restaurant valued at $80,000. The agreement provided that husband was to have the restaurant and that he would pay wife $40,000. Husband informed accuseds he wanted payments to be tax deductible. He was told they were not deductible, but a paragraph was drawn for the agreement which would put husband in the best possible position if he wanted to make the claim that the payments were alimony and deductible. The paragraph used the words "alimony in gross" instead of "property settlement"and originally provided for termination of payments upon the death of wife. The provision for termination of payments upon the death of wife was immediately deleted and the agreement was reexecuted under circumstances which are in dispute. When wife died, husband contended that his payments terminated.

The facts disclose a patent conflict of interest. As we stated in *In re Banks*, 283 Or 459, 477-78, 584 P2d 284 (1978), Disciplinary Rule 5-105 of the Oregon State Bar,[2] while not fitting such a situation exactly, has been "construed to prevent anything from being done which would tend to affect a former client injuriously in any matter in which the former client had been represented." *Also see* Drinker, Legal Ethics 104 (1953), quoting Morrow, J., in Re Boone, 83 F 944, 952-53 (1897); Drinker, Legal Ethics 109 (1953); Wise, Legal Ethics 273 (2d ed 1970). This is true whether or not confidential information is involved. *In re Banks, supra* at 475.

It is the court's conclusion that a public reprimand is required and this opinion will stand as that reprimand. *See In re Banks, supra.* Disbursements are awarded to the Oregon State Bar.

---

[2]

"Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

"(D) If a lawyer is required to decline employment or to withdraw from employment under DR 5-105, no partner or associate may accept or continue such employment."