Argued and submitted November 4,
Accused reprimanded December 2, 1980

In re: Complaint as to the Conduct of

# KENNETH A. HOLMES,

*Accused.*

(NO. 79-39, SC 27094)

619 P2d 1284

Asa L. Lewelling, Salem, argued the cause and filed the brief for the Accused.

Kenneth H. Colley, Corvallis, argued the cause for the Oregon State Bar. With him on the brief was Gretchen R. Morris, Corvallis.

Before Tongue, Presiding Justice, and Howell, Lent, Linde, Peterson and Tanzer, Justices. *

PER CURIAM.

---

* Tanzer, J., did not participate in this decision.

**PER CURIAM.**

This is a disciplinary proceeding by the Oregon State Bar charging the Accused, a Salem lawyer, with having an improper conflict of interest in that (1) he represented one Barbara Brown when she was engaged in a dispute with Valley Credit, Inc., a corporation for which the Accused was attorney and was also a 25% owner, and (2) that he also represented Barbara Brown when she was an adverse party in a legal proceeding brought against her by the Accused on behalf of Valley Credit, Inc.

The Trial Board, one member dissenting, found the Accused not guilty of both charges. The Disciplinary Review Board disagreed. It found the Accused guilty of both charges and recommended that he be reprimanded. Based upon our examination of the record, we agree with that finding and recommendation.[1]

*THE FACTS*

The Accused was attorney for Valley Credit, Inc., and also owned 25% of its stock. During 1975 and 1976 he also represented Barbara Brown in various matters. In "going over" and signing some complaints as attorney for Valley Credit he recognized her name as the name of one of his clients and as a debtor who owed $501 plus interest to a telephone company. He then wrote to her asking that she "let (him) know what the problem is," saying that "if it can't be resolved I will have to sign the complaint. I suppose it's better to have a friendly adversary than an enemy."

The Accused then undertook to negotiate a settlement of the telephone bill, which she denied owing in full. He testified that he agreed with her upon a settlement of $300. He also testified that he also negotiated with her regarding other assigned accounts against her and that in doing so he told her that he was attorney for and part owner of Valley Credit. In addition, he testified that in such negotiations he was representing both her and Valley Credit and that she agreed that he do so.

---

[1] The complaint also charges that the Accused used his solely owned Key Escrow Company to secure payment from his client, Barbara Brown, on behalf of another client without disclosure of the Accused's various financial interests. Both the Trial Board and the Disciplinary Review Board found the Accused not guilty of that charge. We agree, based upon our examination of the record.

Barbara Brown testified that she knew that the Accused was attorney for Valley Credit, but did not know that he was a part owner of it and that he never explained to her that in undertaking to represent both her and Valley Credit in such negotiations there was a potential conflict of interest. She admitted, however, that in another matter in which the Accused represented both her and the other party, he had asked that client to go to another attorney.

When the Accused was asked whether he explained the conflict of interest to Barbara Brown, he testified that "maybe not in express detail" and that he could not recall any particular conversation, but she knew "what my problems were with Valley Credit" and that he "discussed what I thought her problems were in that regard."

The Accused did not testify or contend, however, that he told Barbara Brown that because of the conflict of interest she should perhaps seek the advice of independent counsel. He had no notes or memoranda relating to any conversations with her or advice to her.

These negotiations extended over a period of several months and also included other debts owed by Barbara Brown and assigned to Valley Credit for collection, including claims by Harrah's Club for N.S.F. checks signed by her. Barbara Brown testified that she admitted owing Harrah's Club for the checks but that she told the Accused that she would not pay $526 to the telephone company and that she never agreed to pay $300 in settlement of that bill as suggested by the Accused. She also testified that she hoped to provide funds for payment of the undisputed items from funds received upon closing the sale of some property in which she was represented by the Accused.

On September 17, 1976, the Accused wrote another letter to Barbara Brown about the various debts owed by her and assigned to Valley Credit, including a claim by Harrah's and the telephone bill, and said that unless they were paid by her he would have to withdraw as her attorney.

On October 27, 1976, the sale of the property was closed under an escrow with Key Escrow Company (also owned by the Accused). At that time Barbara Brown was

asked to sign written instructions prepared by the Accused for payment of various debts owed by her, totaling $1,429 from the proceeds of the sale. These included, among other items, payment of $526 to the telephone company and $421 to Harrah's Club. She then refused to pay that amount to the telephone company, crossed out the figures "$526" and wrote in the figure "$256" as the amount to be paid to the telephone company, resulting in a total of $1,160 to be paid on debts owed by her, including $421 to Harrah's Club, from the proceeds of the sale. She then signed that document. Coincidentally, the last representation by the Accused of Barbara Brown was on October 27, 1976, apparently for services in closing that property transaction.

The sum of $1,160 was then paid by Key Escrow to Valley Credit and the Accused was so informed. Apparently, however, Valley Credit was not informed that Barbara Brown had amended the amount of the payment to be made to the telephone company. Valley Credit then paid the telephone bill in full by payment of $526 instead of $256, as instructed by Barbara Brown, and did not pay the Harrah's Club claim in full. Barbara Brown testified that in November 1976 she learned that the Harrah checks had not been paid in full and asked the Accused why they had not been paid.

Subsequently, in March 1977, the Accused, as attorney for Valley Credit, filed in District Court a complaint against Barbara Brown, demanding payment of $1,022 for various debts owed by her and assigned to Valley Credit, including three N.S.F. checks signed by her in September 1975 and payable to Harrah's Club. The Accused testified that at the trial of that case in February 1978 he learned that Valley Credit had not paid the Harrah's Club checks in full, but had paid the telephone bill in full. He testified, however, that he did not know at that time that there had been an error. In May 1978 judgment was entered against Barbara Brown, including $248 for the checks to Harrah's Club. Barbara Brown then complained to the Oregon State Bar. Those checks were then paid by Valley Credit and in October 1978 the Accused filed a partial satisfaction of that judgment.

### 1. *The first charge.*

The first charge against the Accused is that he represented Barbara Brown when she was engaged in a dispute with Valley Credit, Inc.

DR 5-105 provides:

"Refusing to Accept or Continue Employment if the Interest of Another Client May Impair the Independent Professional Judgment of the Lawyer.

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"\* \* \* \* \*

"(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

"\* \* \* \* \*"

An attorney who undertakes to represent both the creditor and the debtor in a dispute over the payment of a debt clearly represents clients who have a conflict of interest. It is contended by the Accused, however, that it was nevertheless proper for him to represent both Valley Credit, the creditor, and Barbara Brown, the debtor, in the dispute over debts owed by her, including the $526 bill of the telephone company, because both clients consented that he undertake to work out a settlement of those debts, with the result that his conduct came within the exception provided by DR 5-105(C). That exception, by its terms, is applicable to the representation by a lawyer of "multiple clients." Thus, a lawyer who undertakes to represent in a business transaction two or more parties with differing interests or a lawyer who undertakes to represent several defendants in a lawsuit who have both common and differing interests is subject to the requirements of DR 5-105(C). (See Ethical Consideration 5-17.)

On the other hand, it is not clear that the term "multiple clients" as used in DR 5-105(C) was intended to apply to situations in which there are two opposing parties

in the sense that one is making a claim against the other, who denies the validity of that claim, as in this case. That question was not raised by either the Accused or the Oregon State Bar, and we find nothing in the nature of "legislative history" of DR 5-105 of assistance in resolving the question.

The argument in this case has proceeded, however, upon the assumption that DR 5-105(C) is applicable to the facts of this case in the sense that the question to be decided is whether the conduct of the Accused comes within the requirement of the exception provided by that rule.

For these reasons, we shall not now undertake to decide whether the conduct of the Accused in this case involved the representation of "multiple clients" within the meaning of DR 5-105(C). Instead, we will proceed to consider the question of whether, assuming the Accused represented "multiple clients," his conduct comes within the exception provided by DR 5-105(C). The two following requirements must be satisfied in order for conduct by a lawyer who represents "multiple clients" to come within the exception promised by that rule:

(1) That both clients have not only consented that he do so, but that before giving such consent there must have been a "full disclosure" by the attorney to both clients of "the possible effect of such representation on the exercise of his independent professional judgment on behalf of each," and

(2) That even when both clients have given consent after such a full disclosure, the attorney may nevertheless not proceed to undertake to represent both of them unless it is "obvious that he can adequately represent the interest of each." [2]

The requirement of "full disclosure" has been stated by this court in *In re Porter,* 283 Or 517, 525, 584 P2d 744 (1978), as follows, quoting with approval from *In re Boivin,* 271 Or 419, 424, 533 P2d 171 (1975):

"To satisfy the requirement of full disclosure by a lawyer before undertaking to represent two conflicting interests, it is not sufficient that both parties be informed of the fact that the lawyer is undertaking to represent both

---

[2] See DR 5-105(C).

of them, but *he must explain to them the nature of the conflict of interest in such detail so that they can understand the reasons why it may be desirable for each to have independent counsel,* with undivided loyalty to the interests of each of them. See Wise, Legal Ethics 77 (2d ed 1970); Patterson and Cheatham, The Profession of Law 232, 235 (1971); Drinker, supra at 121 [Legal Ethics (1953)]; and Annot., 17 ALR3d 835, 838-39 (1968)." (Emphasis in original)

In *In re Boivin, supra,* this court also quoted with approval (at 426) from *In re Kamp,* 40 NJ 588, 194 A2d 236, 240 (1963), involving a lawyer who undertook to represent both the buyer and the seller in a real estate transaction:

"Full disclosure requires the attorney not only to inform the prospective client of the attorney's relationship to the seller, but also to explain in detail the pitfalls that may arise in the course of the transaction which would make it desirable that the buyer have independent counsel. The full significance of the representation of conflicting interests should be disclosed to the client so that he may make an intelligent decision before giving his consent. If the attorney cannot properly represent the buyer in all aspects of the transaction because of his relationship to the seller, full disclosure requires that he inform the buyer of the limited scope of his intended representation of the buyer's interests and point out the advantages of the buyer's retaining independent counsel. * * *" 271 Or at 426.

As in *In re Boivin, supra,* at 427, it does not appear from the record in this case that there was any explanation by the Accused to either Barbara Brown or to Valley Credit of the nature of his potential, if not actual, conflict of interest in undertaking to represent both of them at the same time in a transaction involving a debt owed by the one to the other or of the reasons why it might be desirable for each of them to have independent counsel, so as to satisfy the "full disclosure" requirement of DR 5-105(C). The fact that Barbara Brown knew that the Accused was attorney and part owner of Valley Credit and the fact that Barbara Brown knew that in another transaction the Accused had sent another client to another attorney do not satisfy that requirement, in our judgment.

The second requirement of DR 5-105(C) has also been previously considered by this court in *In re Hershberger,* 288 Or 559, 566, 606 P2d 623 (1980), in which the court

quoted with approval from Ethical Consideration 5-15 of the Code of Professional Responsibility as follows:

"If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. If a lawyer accepted such employment and the interests did become actually differing, he would have to withdraw from employment with likelihood of resulting hardship on the clients; and for this reason it is preferable that he refuse the employment initially."

This court then held in *In re Hershberger, supra* (at 567) that "a lawyer should undertake no representation in which there would be either an actual conflict of interest or a potential conflict of interest," citing *In re Porter,* 283 Or 517, 523, 584 P2d 744 (1978), and *In re Banks,* 283 Or 459, 476-77, 584 P2d 284 (1978), in which this court quoted with approval from Wise, Legal Ethics 273 (2d ed 1970) as follows:

"* * * If there is the slightest doubt as to whether or not the acceptance of professional employment will involve a conflict of interest between two clients or with a former client, or a conflict between the interests of any client and that of the attorney, *or* may require the use of information obtained through the service of another client, the employment should be refused." (Emphasis in original)

■ Upon application of these tests to the facts of this case, we are of the opinion that even if both Barbara Brown and Valley Credit had consented, after "full disclosure," that the Accused represent both of them as their attorney in undertaking to settle the dispute between them involving the $526 telephone bill, these two clients had such an actual and potential conflict of interest that he could not "adequately represent the interest of each" within the meaning of DR 5-105(C), as previously construed by this court.

Indeed, the tangle of events which followed the attempt by the Accused to represent both Barbara Brown and Valley Credit at the same time illustrates the difficulties that may follow from such an endeavor by an attorney, even in complete good faith, as well as the practical reasons for adherence by attorneys to such a rule.

It is contended by the Accused that he did no more than act as a "mediator" or "arbitrator" in an attempt to be of assistance to both Mrs. Brown and Valley Credit in working out a settlement of the dispute between them. Ethical Consideration 5-20 of the Code of Professional Responsibility provides:

> "A lawyer is often asked to serve as an impartial arbitrator or mediator in matters which involve present or former clients. He may serve in either capacity if he first discloses such present or former relationships. After a lawyer has undertaken to act as an impartial arbitrator or mediator, he should not thereafter represent in the dispute any of the parties involved."

In this case, however, the Accused did not testify that he undertook to act as an impartial mediator or arbitrator but testified he was undertaking to "represent" both parties. "Representation" ordinarily means acting as a party's attorney, as defined in ORS 9.310.[3] In any event, the Accused later undertook to represent Valley Credit in an action against Mrs. Brown which included items which were at least indirectly, if not directly, involved in the previous dispute between the parties, contrary to the provisions of EC 5-20.

For these reasons, we agree with the finding by the Disciplinary Review Board that the Accused was guilty of the first charge.

2. *The second charge.*

The second charge against the Accused is that at a time when he represented Barbara Brown he brought a legal action against her on behalf of Valley Credit. It is clear from the record that the Accused no longer represented Mrs. Brown when he filed the suit against her.

---

[3] ORS 9.130 provides:

"An attorney is a person authorized to represent a party in the written proceedings in any action, suit or proceeding, in any stage thereof. * * *"

Nevertheless, the question remains whether he could properly file that suit against her as a former client.

DR 5-105, as previously quoted, was construed by this court in *In re Banks,* 283 Or 459, 477-78, 584 P2d 284 (1978):

> "* * * to prevent anything from being done which would tend to affect a former client injuriously in any matter in which the former client had been represented."

To the same effect, *see In re Mumford,* 285 Or 559, 562, 591 P2d 1377 (1979). *See also In re Hershberger, supra,* at 567.

The action filed by the Accused against Barbara Brown in March 1977 sought judgment against her for debts allegedly owing by her and assigned to Valley Credit, including three N.S.F. checks to Harrah's Club. As previously stated, those checks should have been paid from the proceeds of the sale of property in October 1976.

■ The Accused does not contend that the second charge must be dismissed because Mrs. Brown was no longer a client when the suit against her was filed. It is contended by the Accused, however, that "the complaint in that action was primarily on matters unrelated to the subject matter of the earlier representation of Barbara Brown by the Accused," although it did include three of her N.S.F. checks to Harrah's Club; that he did not "actually represent Mrs. Brown in the conventional sense in connection with the Harrah's checks," and that his "position with regard to all of the accounts with Barbara Brown held by Valley Credit for collection was adverse to Barbara Brown in the sense that if a compromise was not reached, she would be sued," and that "there is nothing about the later law action involving Harrah's checks which affected Mrs. Brown more injuriously because of the Accused's earlier involvement." Finally, it is contended that if DR 5-105 is applicable, "the Accused here most certainly comes within the exception (C)."

We disagree. The claim of Harrah's Club which should have been paid on October 27, 1976, from the proceeds of the sale of property accrued by Mrs. Brown was for $421. The three Harrah's checks which were the subject of the subsequent action, filed by the Accused in March

1977, each for $100, were dated September 20, 1975, and were thus presumably included among the items which were the subject of attempts by the Accused in 1976 to work out a settlement of claims against Mrs. Brown by Valley Credit on items referred to it for collection.

As such, these three checks were at least "related" to the subject matter of that earlier representation of Barbara Brown by the Accused. Whether or not such representation was "in the conventional sense," the Accused did undertake to represent her in such negotiations with Valley Credit. The fact that he told her that she would be sued if a compromise was not reached is wholly immaterial, in our judgment, as is the contention that she was not "more injuriously" affected by his subsequent lawsuit against her because of his "earlier involvement." We also do not agree with the contention that this case comes within the exception provided by DR 5-105(C) because, for one thing, its provisions relating to informed consent have no application to an action filed by an attorney against a former client without the consent of that client.

The Accused had represented Mrs. Brown in her dispute with Valley Credit. It follows, in our opinion, that it was improper for him to subsequently represent Valley Credit in its lawsuit against her for a claim involved in that dispute.

For these reasons, we agree with the finding by the Disciplinary Review Board that the Accused was guilty of the second charge.

We also agree with the recommendations by the Disciplinary Review Board that the Accused be reprimanded for his conduct, as described in this opinion, under the first and second charges of the complaint by the Oregon State Bar.[4] This opinion shall serve as such a reprimand. The Oregon State Bar is also awarded judgment against the Accused for its costs and disbursements.

---

[4] Cf. *In re Boivin,* 271 Or 419, 429, 533 P2d 171 (1975); *In re Banks,* 283 Or 459, 482, 584 P2d 284 (1978); *In re Porter,* 283 Or 517, 529, 584 P2d 744 (1978); *In re Mumford,* 285 Or 559, 562, 591 P2d 1377 (1979), and *In re Hershberger,* 288 Or 559, 568, 606 P2d 623 (1980).