GEORGE G. ACHESON ET AL. *v.* CRAIG WHITE ET AL.
(12228)

PETERS, C. J., HEALEY, SHEA, GLASS and BRENNAN, JS.

Argued December 14, 1984—decision released February 12, 1985

*Bruce S. Beck,* with whom, on the brief, was *Kathleen Eldergill,* for the appellant (defendant Andrea White).

*Noah H. Starkey,* with whom, on the brief, were *Herbert A. Lane* and *Kevin M. O'Brien,* for the appellees (plaintiffs and defendants Joseph S. Licitra et al.).

PETERS, C. J. The sole issue in this appeal is whether a stipulated judgment should be opened because one of the parties thereto claims that she did not consent to its terms. The underlying litigation alleged that the plaintiffs had been defrauded by the defendant Craig F. White's wrongful transfers of property interests in a partnership known as Manchester Professional Park Associates. That law suit named as defendants various transferees of the property at issue, including Craig White's wife, Andrea S. White. After several days of testimony, a stipulated judgment settling that litigation was entered by *Spada, J.,* in open court. Thereafter, the defendant Andrea White filed a timely

motion, pursuant to Practice Book § 326,[1] to open the judgment against her.[2] The trial court, *Kelly, J.,* having held an evidentiary hearing, denied the motion to open and this appeal by Andrea White ensued.

The stipulated judgment that the appellant Andrea White seeks to open was entered in open court with Attorney Richard Robinson representing both Craig White and the appellant. As part of the stipulated judgment, Craig White and Andrea White agreed to relinquish entirely whatever their interests were or might have been in and to Manchester Professional Park Associates. Other defendants retained designated shares in the partnership. Craig White was present in the courtroom at the time of the stipulated judgment. Andrea White, who had attended the trial earlier, was not present.

In her motion to open and to set aside the stipulated judgment under § 326 of the Practice Book, the appellant claimed that she had not given her consent, either as a matter of fact or as a matter of law, to total divestiture of her interest in Manchester Professional Park Associates. She asked the trial court to exercise its discretion in her favor and to open the judgment for two reasons allegedly showing her lack of consent: first, that she had not consented to the specific terms of the stipulated judgment; and, second, that she was not bound by her attorney's agreement to the stipulated judgment because of the conflict of interest created by his joint representation of herself and Craig White.

---

[1] "[Practice Book] Sec. 326. SETTING ASIDE OR OPENING JUDGMENTS

"Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which it was rendered or passed. The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court."

[2] Craig F. White simultaneously filed a separate motion to open. He has not appealed the decision of the trial court denying his motion.

Although the motion to the trial court did not confine itself to questions of consent,[3] only the consent issues are presently before us.

The trial court denied the motion to open. Relying on the testimony of the appellant Andrea White, Craig White and Robinson, the court found that the appellant did in fact consent to the terms of the settlement that was the basis for the stipulated judgment. The court concluded further that the allegations of conflict of interest, because they did not raise questions of fraud or of mutual mistake, furnished no basis for setting the judgment aside. The appellant challenges the validity of both of these rulings. We find no error.

Before we examine the claims that the appellant pursues on her appeal, it is useful to make clear what claims the appellant is not making. She does not attack the stipulated judgment on the ground of fraud, duress, accident or mistake. See *Connecticut Pharmaceutical Assn., Inc.* v. *Milano,* 191 Conn. 555, 558, 468 A.2d 1230 (1983); *Celanese Fiber, Division of Celanese of Canada, Ltd.* v. *Pic Yarns, Inc.,* 184 Conn. 461, 466, 440 A.2d 159 (1981); *Kenworthy* v. *Kenworthy,* 180 Conn. 129, 131–32, 429 A.2d 837 (1980); *Bryan* v. *Reynolds,* 143 Conn. 456, 460–61, 123 A.2d 192 (1956); 3 Freeman, Judgments (5th Ed. 1925) § 1352. She does not argue that her attorney lacked all authority to enter into a settlement on her behalf[4] nor does she maintain

---

[3] In the trial court, Andrea White argued that the judgment should be set aside, regardless of her consent, for three reasons, all of which the trial court rejected. She claimed that the stipulated judgment could not validly order relief that had not been sought by the plaintiffs' complaint. She claimed that the stipulated judgment could not treat her differently than other defendants allegedly similarly situated, just because she was Craig White's wife. Finally, she claimed that the trial court lacked jurisdiction to enter the stipulated judgment since that judgment purported to adjudicate the rights of individuals not before the court.

[4] An attorney who is authorized to represent a client in litigation does not automatically have either implied or apparent authority to settle or otherwise to compromise the client's cause of action. *Cole* v. *Myers,* 128

that he acted without informed consent on her part to his joint representation of herself and Craig White.[5] Finally, she does not contest the plaintiffs' factual assertions that, with respect to the property of which she was divested by the stipulated judgment, her status was that of a donee rather than that of a purchaser for value and that Craig White was her trustee.

The claims which the appellant has chosen to pursue must be considered, in this court, with due regard to the limited nature of our review of motions arising under Practice Book § 326. "A motion to open and vacate a judgment filed during the four months after which judgment was rendered is addressed to the court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasona-

Conn. 223, 228, 21 A.2d 396 (1941); *National Bread Co.* v. *Bird,* 226 Ala. 40, 42, 145 So. 462 (1933); *Fresno* v. *Baboian,* 52 Cal. App. 3d 753, 758, 125 Cal. Rptr. 332 (1975); *Rushing* v. *Garrett,* 375 So. 2d 903, 905–908 (Fla. App. 1979); *Dragstra* v. *Northwestern State Bank of Orange City,* 192 N.W.2d 786, 790–91 (Iowa 1971); *In re Conservatorship of Hatfield,* 231 Kan. 427, 428–29, 646 P.2d 481 (1982); *De Long* v. *Owsley's Ex'x,* 308 Ky. 128, 130, 213 S.W.2d 806 (1984); *Kinkaid* v. *Cessna,* 49 Md. App. 18, 22–23, 430 A.2d 88 (1981); *State Bar Grievance Administrator* v. *Estes,* 390 Mich. 585, 600, 212 N.W.2d 903 (1973); *Gibson* v. *Nelson,* 111 Minn. 183, 187–89, 126 N.W. 731 (1910); *Couch* v. *Landers,* 316 S.W.2d 588, 592–94 (Mo. 1958); *Vaughn* v. *Robbins,* 254 Mass. 35, 36, 149 N.E. 677 (1925); *Morgan* v. *Hood,* 211 N.C. 91, 92–93, 189 S.E. 115 (1937); *National Valve & Mfg. Co.* v. *Wright,* 205 Okla. 571, 572–73, 240 P.2d 766 (1951); *Archbishop* v. *Karlak,* 450 Pa. 535, 539, 299 A.2d 294 (1973); *Northwest Realty Co.* v. *Perez,* 80 S.D. 62, 65–66, 119 N.W.2d 114 (1963); *Noska* v. *Mills,* 141 S.W.2d 429, 432 (Tex. Civ. App. 1940); *Watt* v. *Brookover,* 35 W. Va. 323, 327, 13 S.E. 1007 (1891); contra *Phoenix Properties of Atlanta, Inc.* v. *Umstead,* 245 Ga. 172, 172, 264 S.E.2d 8 (1980); *Bergman* v. *Rhodes,* 334 Ill. 137, 142–43, 165 N.E. 598 (1929); *McNelis* v. *Wheeler,* 225 Ind. 148, 154–55, 73 N.E.2d 339 (1947); *Lord Jeff Knitting Co.* v. *Mills,* 281 S.C. 374, 376–77, 315 S.E.2d 377 (1984); *Haller* v. *Wallis,* 89 Wash. 2d 539, 547, 573 P.2d 1302 (1978).

[5] The Code of Professional Responsibility permits an attorney to represent multiple clients only "if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." Code of Profes-

bly and in clear abuse of its discretion. See *Manchester State Bank* v. *Reale,* 172 Conn. 520, 523–24, 375 A.2d 1009 (1979); *State* v. *Fahey,* 147 Conn. 13, 15, 156 A.2d 463 (1959). In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. *State* v. *Bitting,* 162 Conn. 1, 11, 291 A.2d 240 (1971); *E. M. Loew's Enterprises, Inc.* v. *Surabian,* 146 Conn. 608, 612, 153 A.2d 463 (1959)." *Celanese Fiber, Division of Celanese of Canada, Ltd.* v. *Pic Yarns, Inc.,* supra, 466–67.

Viewed against this background, the appellant's claim of lack of actual consent to the stipulated judgment is unsupportable. The appellant concedes that Robinson, Craig White and the appellant met to discuss the contours of a possible settlement on January 20, 1983. She also concedes that the trial court was presented with conflicting evidence about what transpired at that meeting. The trial court was entitled, in its role as the arbiter of credibility, to believe Robinson's testimony that the appellant had agreed to the divestiture which was incorporated into the stipulated judgment on January 25, 1983. *Varley* v. *Varley,* 189 Conn. 490, 493, 457 A.2d 1065 (1983). The trial court might reasonably have concluded that her consent to divestiture

---

sional Responsibility DR 5-105 (C); see also EC 5-16, 5-19. Because the danger of a conflict of interest is inherent in any multiple representation, an attorney must disclose more than the fact that he is undertaking to represent more than one client. Full disclosure requires the attorney to explain to the client in detail the risks and the foreseeable pitfalls that may arise in the course of the transaction so that the client can understand the reasons why it may be desirable for him or her to have independent counsel. See *International Electronics Corporation* v. *Flanzer,* 527 F.2d 1288, 1295–96 (2d Cir. 1975); *Klemm* v. *Superior Court of Fresno County,* 75 Cal. App. 3d 893, 897–901, 142 Cal. Rptr. 509 (1977); *Crest Investment Trust, Inc.* v. *Comstock,* 23 Md. App. 280, 303–307, 327 A.2d 891 (1974); *In re Dolan,* 76 N.J. 1, 9–12, 384 A.2d 1076 (1978); *In re Holmes,* 290 Or. 173, 179–80, 619 P.2d 1284 (1980); see also Moore, "Conflicts of Interest in the Simultaneous Representation of Multiple Clients: A Proposed Solution to the Current Confusion and Controversy," 61 Tex. L. Rev. 211, 240–45 (1982).

was motivated by her concern for the extent of Craig White's potential liability if the lawsuit had continued. Given this motivation, the court could logically have inferred that the appellant's consent to the terms of the stipulated judgment as they affected her interest in Manchester Professional Park Associates did not necessarily depend upon her specific knowledge of what interests in that property might be retained by other defendants not similarly situated.[6] Considering all these circumstances, we cannot find that the trial court abused its discretion in denying the motion to open the judgment for lack of actual consent.

The appellant's more troublesome claim is her assertion that her actual consent was fatally tainted, as a matter of law, by a clear conflict of interest arising out of Robinson's joint representation of the appellant and Craig White. The appellant argues that she could not make an informed choice about the desirability of the terms of the stipulated judgment with the advice of counsel whose primary concern was the protection of her co-defendant Craig White.

The trial court responded to this claim without finding whether Robinson's joint representation constituted a conflict of interest. The court held, instead, that if such a conflict existed, it involved a question of the ethics of Robinson's representation of the appellant and Craig White. The court further held that such ethical considerations, in the absence of fraud or mutual mistake, would not warrant the opening of a stipulated judgment, because the other parties thereto were entitled to rely upon the fact that Robinson had entered his appearance for, and was defending, both the appellant and Craig White. The record contains nothing to indicate that the appellant, after the announcement of the memorandum of decision, sought from the trial

---

[6] The defendants other than Craig White and Andrea White were purchasers for value who had no familial ties to Craig White. Craig White was trustee for Andrea White only.

court an express ruling on whether there was in fact a conflict of interest.

In this court, the parties now disagree vigorously whether Robinson's joint representation of the appellant and Craig White led to a conflict of interest with regard to the settlement underlying the stipulated judgment. The appellant claims that Robinson primarily consulted with Craig White, instructed the appellant not to worry about the plaintiffs' complaint, did not discuss possible defenses with her, and discouraged her from obtaining independent counsel. The plaintiffs, however, claim that there was a continuous mutuality and unity of interest between the appellant and Craig White, that her defense was inextricably linked to her husband's, her property interest was derivative of his, and her confidence in her husband's fiduciary conduct was never repudiated. This is a disagreement that we cannot resolve. Although each party purports to rely on testimony that was allegedly uncontradicted, we cannot determine what testimony the trier of fact would have found credible. It is a well established principle that "[a] fact is not admitted or undisputed simply because it is uncontradicted." *Friedson* v. *Westport,* 181 Conn. 230, 233, 435 A.2d 17 (1980); *Barrila* v. *Blake,* 190 Conn. 631, 639, 461 A.2d 1375 (1983). On this record, we cannot conclude that the appellant has proven the existence of a clear conflict of interest.[7]

Without the factual predicate of a conflict of interest, we cannot adjudicate the appellant's claim that she

---

[7] In her reply brief, the appellant suggests, for the first time, that the trial court erred in refusing to permit the appellant to introduce evidence on the question of conflict of interest. No evidentiary question is raised in her statement of issues; see Practice Book § 3060F (a); and no such question is addressed in her brief-in-chief, which assumes that there is "a clear conflict of interest." The evidentiary question was not pursued on oral argument to this court, nor was it presented in the reply brief in the manner required by Practice Book § 3060F (c) (3). See *State* v. *Vass,* 191 Conn. 604, 621, 469 A.2d 767 (1983). In these circumstances, we decline to consider this question further.

received advice from Robinson that was so inadequate that it undermined, as a matter of law, her actual consent to the stipulated judgment. We recognize that the Code of Professional Responsibility imposes special obligations of disclosure upon an attorney who makes an aggregate settlement of the claims of clients whom he jointly represents. DR 5-106 (A);[8] see *Hayes* v. *Eagle-Picher Industries, Inc.*, 513 F.2d 892, 894 (10th Cir. 1975). We reserve for another day the question whether an attorney with a conflict of interest can never effectively make the required disclosure.

The appellant has failed to establish her lack of consent, either as a matter of fact or as a matter of law, to the stipulated judgment whose validity she challenges. We therefore conclude that the trial court did not abuse its discretion in denying her motion to open the judgment.

There is no error.

In this opinion the other judges concurred.

[8] Code of Professional Responsibility DR 5-106 (A) provides: "DR 5-106 SETTLING SIMILAR CLAIMS OF CLIENTS.

"(A) A lawyer who represents two or more clients shall not make or participate in the making of an aggregate settlement of the claims of or against his clients, unless each client has consented to the settlement after being advised of the existence and nature of all the claims involved in the proposed settlement, of the total amount of the settlement, and of the participation of each person in the settlement."