Argued and submitted June 5, accused reprimanded August 8, 1985

In re Complaint as to the Conduct of

# RICHARD H. RENN,
*Accused.*

(82-44; SC S31448)

704 P2d 109

Larry O. Gildea, Eugene, argued the cause and filed briefs for accused.

Rodney K. Norton, Jr., argued the cause and filed a brief for Oregon State Bar.

PER CURIAM

## PER CURIAM

Richard H. Renn (Renn), an Albany attorney, is charged with unethical conduct in two respects. The first concerns his simultaneous representation of a bankrupt and a person having a claim against the bankrupt's estate. The second concerns his representation of the estate of a decedent against a former client who was a creditor of the estate. We find Renn guilty of violating DR 5-105(A) and DR 5-105(B).[1]

## I

We find:

1. Bonnie Murphy (Murphy) and Bob Branam (Branam) were unmarried and living together in 1977. They were also involved in a hearing aid business corporation. Murphy was a shareholder and secretary-treasure of the corporation.

2. Prior to June 27, 1978, Murphy and Branam retained Renn to represent them in the purchase of a farm. Murphy directed that she not be named as a purchaser in the land sale contract because of her fear of becoming personally liable for Branam's indebtedness. Renn represented Branam and Murphy in preparing a land sale contract and related contract documents.

3. On September 23, 1978, Branam and Murphy were married. In April, 1979, Murphy decided to dissolve the marriage because of her concern that she might become personally liable for Branam's debts. She engaged Renn to represent her in the marriage dissolution proceeding. Renn filed a complaint on Murphy's behalf, and represented her throughout the dissolution proceeding and thereafter.

---

[1] The complaint charged Renn with other violations. All other charges were withdrawn before the hearing began, except for a charge that Renn violated DR 7-101(A)(2). It reads:

"(A) A lawyer shall not intentionally:

"* * * * *

"(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105."

We find Renn not guilty of intentionally failing to carry out a contract of employment entered into with a client for professional services.

Branam consented to Renn's representation of Murphy. Branam was not represented in the dissolution proceeding.

4. A default dissolution hearing was held on October 26, 1979. A property settlement agreement executed by Murphy and Branam was received into evidence. The decree of marriage dissolution was signed on December 21, 1979, *nunc pro tunc* October 26, 1979. The property settlement agreement and decree included these provisions, among others:

"1. That the property known as a 'farm' purchased prior to the marriage, a description of which is attached hereto and is incorporated as Exhibit 'A', be granted to BOBBY LEE BRANAM, subject to a lien in favor of BONNIE LARRAINE BRANAM in the sum of TEN THOUSAND and 00/100 DOLLARS ($10,000.00) as described below.

"* * * * *

"4. BOBBY BRANAM hereby agrees to pay to BONNIE BRANAM the sum of TEN THOUSAND and 00/100 DOLLARS ($10,000.00), which sum will not bear interest, at the rate of $300.00 per month commencing on December 1, 1979, and make a similar payment every month thereafter until the entire balance of $10,000.00 is paid; said debt constitutes a lien on real property described in Exhibit 'A'.

"5. BOBBY BRANAM agrees to pay all existing indebtedness of the parties and hold BONNIE BRANAM safe therefrom, including an indebtedness owing to CITIZENS VALLEY BANK wherein Mrs. BRANAM is a cosignor.

"* * * * *

"10. It is further agreed by BOBBY BRANAM that he will pay all indebtednesses of the business known as WEST COAST HEARING AID CENTER, and the corporation that owns the same, and hold Mrs. BRANAM safe from any obligations or liabilities incurred in connection with said business and corporation.

"11. It is further agreed by BOBBY BRANAM that he will pay to BONNIE BRANAM the sum of $1,200.00 on or before November 15, 1979, to reimburse her for expenses of moving and other items relative thereto.

"12. BOBBY BRANAM further agrees to pay BONNIE BRANAM's attorney fees and costs for the dissolution of marriage action in the amounts of $95.80 costs and $400.00

attorney fees to RICHARD H. RENN, attorney at law, at 428 SE Second Street, Albany, Oregon, by payment of $75.00 per month commencing January 1, 1980, and every first of the month thereafter until the same is fully paid. Said sums shall constitute a lien on the real property described in the attached Exhibit 'A'."

5. Renn continued to represent Murphy in regard to matters arising from the marriage dissolution proceeding until April, 1980. Renn has not represented or advised Murphy since April, 1980.

6. In October, 1979, a complaint to foreclose the land sale contract was filed. Until the foreclosure suit was settled in the summer of 1980, Renn represented Branam in the foreclosure suit, with Murphy's consent.

7. In February, 1980, Renn represented Branam in preparing bankruptcy petition schedules that were signed on February 29, 1980, and filed on March 3, 1980. Thereafter, Renn represented Branam in the bankruptcy proceeding. Renn did not obtain Murphy's consent to so represent Branam. The bankruptcy petition listed Murphy as a general creditor. The trustee in bankruptcy did release the farm property to secured creditors (who were Murphy and the vendor) under the land sale contract. Murphy's lien was not affected by the bankruptcy proceedings.

8. Before the petition in bankruptcy was filed, Renn did not tell Murphy that the bankruptcy would be filed or that she would be listed as a creditor. Nor did he tell her that the $10,000 debt from Branam to her could be discharged. Renn told Murphy that the bankruptcy proceedings would not adversely affect the $10,000 lien against Branam's interest in the farm property. Renn also told her to file an appropriate notice with the bankruptcy court of her secured claim and interest in the farm property. Murphy did so.

9. Before April 25, 1981, a second foreclosure suit was filed to foreclose the farm property. Renn undertook Branam's representation in the second foreclosure suit. Murphy did not consent to that representation. Branam died on April 25, 1981. Thereafter the personal representative of

Branam's estate was substituted as defendant in the fore-closure suit, and Renn represented the personal represen-tative. Murphy did not consent to Renn's representation of the personal representative in the second foreclosure suit.

10.   Renn notified Murphy of a possible sale of the farm property by the estate, and told her to obtain indepen-dent counsel to represent her. She did so, and thereafter presented a claim against the estate. Renn negotiated on behalf of the estate in an attempt to compromise Murphy's claim against Branam's estate.

## II

The complaint against Renn charges Renn with violating DR 5-105(A), (B), and (C), which provide:

"(A)   A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"(B)   A lawyer shall not continue employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his *representation of another client*, except to the extent permit-ted under DR 5-105(C).

"(C)   In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of the independent professional judgment on behalf of each."[2]

*Representation of Renn in the Bankruptcy Proceeding*

In *In re Brandsness*, 299 Or 420, 702 P2d 1098 (1985), we stated:

"DR 5-105, by its terms and by judicial interpretation applies to conflicts generated by the lawyer's simultaneous representation of two current clients (the so-called 'open file' conflict) and by representation of a new or present client against a former client (the so-called 'closed file' conflict)."

The term "closed file" refers to a situation in which a

---

[2] Strictly speaking, DR 5-105(C) is not a prohibition. Rather, it states an exception under which a lawyer can engage in conduct otherwise prohibited.

lawyer represents a current client against one who no longer is a client. *In re Brandsness, supra,* 299 Or at 425. In the case at bar, the parties have stipulated that "Renn continued to advise Murphy with respect to matters arising from the marriage dissolution proceedings" during the spring of 1980. Therefore, insofar as the bankruptcy proceedings are concerned, this is an "open file" case. Renn concurrently represented Murphy and Branam.

Renn represented Murphy in obtaining a substantial monetary dissolution award. Within two months after the entry of the dissolution decree, and while still representing Murphy, Renn accepted employment on behalf of Branam, an engagement that threatened to eliminate Branam's financial obligation to Murphy in whole or in part. Renn prepared and filed a bankruptcy petition while still counselling and advising Murphy with respect to the decree.

The conflict between Branam and Murphy is apparent. A debtor-creditor relationship existed. Renn's duty of loyalty to Murphy required him to protect the award obtained by Murphy in the dissolution proceeding.[3] His duty of loyalty to Branam in the bankruptcy case required him to assist Branam in obtaining a discharge of Branam's financial obligations. Renn could not concurrently represent both Murphy and Branam for they had conflicting goals.[4]

---

[3] The record does not reveal whether Renn had agreed to assist Murphy in *collecting* the award.

[4] We express no opinion whether it is always unethical for a lawyer to represent a client in a bankruptcy when a present or former client is a creditor of the bankrupt. *Compare* Opinions of Committee on Legal Ethics, Op. 216, June 15, 1972, reported in Oregon State Bar Professional Responsibility Manual 219-20 (1985). That opinion states:

"*QUESTIONS:* Is it ethical for an attorney to represent a client in regard to bankruptcy if the following facts exist?

"1. Creditors listed on the bankruptcy schedules are represented on a retainer basis by the attorney representing the bankrupt.

"2. Creditors listed on the bankruptcy schedules of the bankrupt are represented in other credit matters regarding the bankrupt.

"3. Creditors listed on the bankruptcy schedules are represented in credit matters regarding the bankrupt.

"* * * * *

"Based upon the above general principles, the following three separate answers are given:

Renn argues that his "exercise of judgment in pursuing bankruptcy for Branam could not have adversely affected Murphy's interest." He argues that Murphy's lien "was a non-avoidable secured claim."

This argument overlooks the fact that Murphy was a creditor of Branam. Although portions of her claim were secured by a judgment lien, the bankruptcy would eliminate that portion of the claim, if any, not secured by the judgment lien. The determination whether to list Murphy's claim as secured or unsecured itself raises a difficult question. The bankruptcy petition lists Bonnie Murphy as a creditor with "unsecured claims without priority," totalling $10,000. From our examination of the decree, it appears that some of her claims may have been secured and others unsecured.

DR 5-105(A) provides that a lawyer "shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment." Here, Renn's obligation as lawyer for Murphy was to protect the obligation created by the judgment to the fullest extent possible.

His obligation as attorney for Branam was to extinguish as many creditors' claims as possible. A debtor-creditor relationship existed between Branam and Murphy. It would not be possible for Renn to exercise independent professional judgment on behalf of Branam, in light of Renn's concurrent representation of Murphy. A violation of DR 5-105(A) has been established.

We also find a violation of DR 5-105(B), which

---

"1. If creditors listed on the bankruptcy schedules are represented on a retainer basis by the attorney who wishes to represent the bankrupt, obviously the interests of the two clients are adverse. Representation of the bankrupt, even after a full disclosure, would be unethical.

"2. The mere fact that a creditor's claim will be listed on the bankruptcy schedule makes him an adverse party under Formal Opinion No. 40. Representation by the attorney of the bankrupt would be unethical.

"3. Since the attorney has previously represented the creditors and is presently representing them in credit matters regarding the bankrupt, there would be divided loyalties — conflict of interests, and it would be unethical to represent the bankrupt."

prohibits the continuation of employment "if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client." For the reasons expressed above, it would be virtually impossible to exercise truly independent professional judgment on behalf of both clients in the situation described above. A violation of DR 5-105(B) has been established.

DR 5-105(C) provides for an exception under which a lawyer may represent multiple clients if two conditions are shown to exist. Those conditions are (1) it is obvious that he can adequately represent the interest of each; and (2) "if each consents * * * after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." Here, as respects the second requirement, there was neither full disclosure nor consent, and it is unlikely that Renn could "adequately represent the interest of each." Renn is not within the DR 5-105(C) exception.[5]

Our conclusion is supported by *In re Mumford,* 285 Or 559, 591 P2d 1377 (1979). We there found a violation of DR 5-105 when two lawyers undertook to collect unpaid installments due a wife in a divorce case from a husband who the lawyers had represented in negotiating the settlement some years earlier.

---

[5] In *In re Jans,* 295 Or 289, 295, 666 P2d 830, 833 (1983), we stated:

"* * * It is never proper for a lawyer to represent clients with conflicting interests no matter how carefully and thoroughly the lawyer discloses the possible effect and obtains consent." (Footnote omitted.)

If a lawyer has two clients, and the goal of client No. 1 is to attain a thing from client No. 2, and the goal of client No. 2 is to keep the thing that client No. 1 wants, there is no way that a lawyer can give *independent* professional judgment to either. Nor is there any way in which the lawyer can adequately represent the interest of each.

A situation may arise in a bankruptcy case, or in other cases, in which clients have interests as variant as described above, but choose to permit the lawyer to represent one client in the bankruptcy or in litigation. For example, suppose a manufacturer and wholesaler are sued in a products case. Suppose the wholesaler and manufacturer agree that attorney *A* represent both of them in defending a plaintiff's claim, notwithstanding the fact that the manufacturer "is answerable over" to the wholesaler. *See* ORS 72.6070(5),(6). This likely can be done, assuming proper disclosure and proper consent, because neither client expects the lawyer to represent him or her on the merits of the indemnity claim between them and because they have an identity of interest in defending the plaintiff's claim.

*In re Hershberger,* 288 Or 559, 606 P2d 623 (1980), is also in point. There, a lawyer who filed a bankruptcy petition on behalf of one client, and thereafter, while the bankruptcy proceedings were still pending, filed a foreclosure suit for another client naming the former client as a defendant. We found a violation of DR 5-105.

### Representation of the Estate

Renn's representation of the estate after his representation of Murphy ended in April, 1981, created the potential for a "closed file" conflict, such as is referred to in *In re Brandsness, supra.* According to *Brandsness,* "[a] 'closed file' conflict arises when a lawyer represents a client who is in a position adverse to a former client in a matter that is significantly related to a matter in which the lawyer represented the former client." 299 Or at 426. *Brandsness* states this three-factor test:

"1.   The adverse party is one with whom the accused had a lawyer-client relationship;

"2.   The representation of the present client puts the accused in a position adverse to the former client; and

"3.   The present matter is significantly related to a matter in which the accused represented the former client."

299 Or at 427.

Applying that test here, as regards the first factor, there is no question that a lawyer-client relationship formerly existed between Renn and Murphy. As for the third factor, there is no question that the matter as to which Renn was negotiating on behalf of the estate was significantly related to a matter in which Renn had represented Murphy. The concerned matter was the obligation created in favor of Murphy by the dissolution decree, an obligation in the creation of which Renn actively participated. As far as the second factor — the adverse position factor — for reasons discussed above, the debtor-creditor relationship between Branam and Murphy created an adverse interest. In representing the estate, Renn violated DR 5-105(A).[6]

---

[6] As *In re Brandsness,* 299 Or 420, 424-25, 702 P2d 1098 (1985), points out, although the literal language of DR 5-105 does not extend to former clients, by judicial interpretation DR 5-105 applies to representing a new or present client against a former client.

## III

As in *In re Brandsness, supra,* having found a conflict of interest to exist, we conclude that Renn should be issued a reprimand. This opinion will serve as the reprimand.

Costs to the Oregon State Bar.