Argued and submitted March 5, public reprimand ordered May 22, 1984

# In re Complaint as to the Conduct of
# KURT CARSTENS, JR.,
*Accused.*

## (SC 28534)

683 P2d 992

Thomas C. Tankersley, McMinnville, and M. Chapin Milbank, Salem, argued the cause and filed the brief for the Oregon State Bar.

Gordon L. MacPherson, Newport, argued the cause and filed the brief for the Accused.

## PER CURIAM

The Oregon State Bar filed a complaint against Kurt Carstens, Jr. accusing him of unethical conduct in six separate causes. All causes arise, directly or indirectly, from the accused's signing of his wife's name to the certificates of title to three items of jointly owned personal property—a pickup truck, a boat trailer, and a boat.

The Bar's complaint is dated August 17, 1982. The Trial Board found the accused guilty of only one cause of complaint and recommended that he receive a public reprimand. The seven member Disciplinary Review Board found the accused not guilty of all charges. We find the accused guilty of one cause of complaint and not guilty of the remaining causes.

Oregon Laws 1983, Chapter 618, made substantial changes in the laws relating to the discipline of lawyers. However, that chapter provides that any proceedings pending on January 1, 1984, shall be completed as provided in the former statutes.[1]

The accused was admitted to the practice of law in 1972. He married Denise Carstens in July, 1977. The marriage was described as "stormy" with a relationship that was "on again, off again." A petition for dissolution was filed in April, 1980. The wife moved back into the couple's residence in February, 1981, and continued to reside with the accused until October, 1981. The trial judge who entered a decree of dissolution in September, 1982 noted in a letter opinion that "the parties actually lived together as man and wife for a total of 39 months."

During the marriage the parties acquired a 1976 Ford pickup truck, an 18.6 foot Gregor Jet Sled boat and a light boat trailer. The title to each was registered with the State of Oregon in the joint names of Kurt Carstens and Denise Carstens.

---

[1] Section 1, Chapter 618, Oregon Laws 1983 provides:

"ORS 9.525, 9.535, 9.550, 9.560, 9.570 and 9.580 are repealed on January 1, 1984. However, any proceedings pending under ORS 9.525, 9.535, 9.550, 9.560, 9.570 and 9.580 on January 1, 1984, shall be completed as provided in those statutes."

In February, 1981, after the petition for dissolution had been filed, but while the parties were living together in an attempt to reconcile, the accused discussed with his wife the potential tax advantages of transferring the boat trailer and the boat to his professional corporation. Later the same month, without his wife's express permission or knowledge, he signed her name to the certificates of title and forwarded them to the proper state agencies with instructions to "issue a new certificate showing the owner to be Kurt Carstens, P.C., an Oregon professional corporation."

On October 2, 1981, after the reconciliation had failed, John Chasteen, Jr. came to the accused's law office and offered to buy the pickup truck for $4,000. Chasteen was a young adult commercial fisherman whose mother was the bookkeeper for the accused's law firm. The truck had been valued in the pretrial discovery in the dissolution case in a range of $2,450 to $3,000. The accused called Richard D. Beeson, a lawyer who was representing him. Beeson advised him to sell the truck. Chasteen paid the accused in cash. The accused signed both his and his wife's names to the certificate of title and delivered it to Chasteen.[2] The accused deposited the $4,000 in one of his individual savings accounts.

On October 4, 1981, the accused left a note for his wife at the residence. In part it read:

---

[2] On cross examination at the later criminal trial the accused testified as follows:

"Q. Mr. Carstens, I want to hand you what has been received as State's Exhibit Number 2. Is that the title that you executed?

"A. That's the '76 Ford pickup title that I executed; yes.

"Q. You signed both of those names on the back, is that correct?

"A. That's correct.

"Q. Why did you use different colored ink in signing them?

"A. As I explained to you previously, the reason for doing this was to be certain that the Department of Motor Vehicles would pass the title through.

"Q. You didn't want them to think there was anything funny about it; is that right?

"A. Yes.

"Q. And, you also didn't want Mr. Chasteen to think there was anything funny about it; right?

"A. That thought hadn't crossed my mind, but I guess that's correct."

"On Friday afternoon John Chasteen Jr. offered me $4000.00 cash for the truck — Given the condition of the truck and its age it was a good deal for us — and you didn't want it — so I sold it. But I'll need to get a replacement and that will put us (me) further in the hole. But it was 1500—2000 more than I expected to get."

Thereafter the wife contacted the police and instigated a criminal investigation claiming that her name on the title had been forged. In mid-October the wife found the boat and trailer registrations in the name of the professional corporation in a kitchen drawer at the residence and requested the police to make a further investigation.

The grand jury of Lincoln County returned three indictments against the accused.[3] Copies of the indictments are not a part of the record in this proceeding, but the memorandum opinion of the trial judge who tried the subsequent criminal case stated:

"The *first* indictment charges two counts of forgery and one count of the theft involving the boat trailer. The *second* indictment * * * charges two counts of forgery and one count of theft involving the boat. The *third* indictment sets forth two counts each of forgery and theft involving the pick-up truck." (Emphasis in original.)

The accused's wife was the alleged victim in all counts of the indictments except one count of theft and one count of forgery involving the pickup truck where John Chasteen, Jr. was the alleged victim.

The criminal cases were consolidated and tried without a jury on January 28, 1982. The trial court dismissed all counts involving theft where it was alleged that accused's wife was the victim. It was stipulated that the accused and his wife were living together at the specific times alleged in the counts involving the boat trailer and the boat. The trial court ruled that "ORS 164.035(4) clearly directs that those thefts be dismissed."[4] The trial court also reasoned that the alleged

---

[3] On November 10, 1981, the accused properly wrote to the Oregon State Bar informing it that the indictments had been returned against him.

[4] ORS 164.035(4) provides:

"(4) It is a defense [to theft] that the property involved was that of the defendant's spouse, unless the parties were not living together as man and wife and were living in separate abodes at the time of the alleged theft."

theft of the pickup wherein the wife was the alleged victim must also be dismissed by virtue of ORS 164.105(2), 164.015 and 164.005(4).

The trial court also dismissed all counts of forgery wherein it was alleged that the wife was the victim. It found that "there simply is no evidence that Mrs. Carstens might be injured" from the accused's use of the titles. To support its position the trial court cited ORS 165.007, 165.013, 161.085(7), *State v. Leonard,* 73 Or 451, 144 P 681 (1914) and *State v. Lurch,* 12 Or 99, 6 P 408 (1885).

After dismissing the counts of theft and forgery wherein the wife was the alleged victim there remained only one count of theft and one count of forgery. In each count the alleged victim was John Chasteen, Jr. The accused was found guilty of the two remaining counts. The trial court found that Chasteen had been injured by the accused's conduct. It reasoned that when the accused signed his wife's name to the title to the pickup the document was rendered void. Thus the victim "ended up with something less than what he had paid for and cannot now convey ownership of the vehicle."

The trial court merged the forgery conviction with the theft conviction and entered a sentence on the theft conviction only, declaring it to be a Class A Misdemeanor by virtue of ORS 161.705. The accused was sentenced to five months in jail. The execution of the sentence was suspended and he was placed on five years probation.[5]

The accused appealed his conviction to the Court of Appeals. The criminal proceeding terminated with that court

---

[5] Special conditions of the probation were:

"1. The defendant shall make full restitution to the victim herein, John Chasteen, by providing him with full, legal title to the pickup truck which was the subject of the theft of the subject crime, and by any other means necessary to make Mr. Chasteen whole in the subject transaction; 2. The defendant shall perform 200 hours of community service under the supervision of the Corrections Division, utilizing legal skills if possible; 3. The defendant shall submit written reports to the Court regarding performance of probation conditions and status at six, twelve and twenty month intervals; 4. The defendant shall obey all laws and all reasonable and necessary regulations of probation required by the Corrections Division. The defendant shall serve twenty months of his probation under supervision of the Corrections Division, and the remainder of his probation in an unsupervised, informal status."

affirming without opinion in April, 1983. 62 Or App 663, 662 P2d 813 (1983).

The dissolution case was tried on July 29, 1982. Thereafter the trial judge entered a decree dissolving the marriage which in effect awarded the boat trailer, boat, and pickup truck to the accused.

The Oregon State Bar filed its formal complaint against the accused on August 17, 1982. The complaint sets forth six separate causes which are summarized as follows:

(1)    The accused was found guilty of Forgery in the First Degree and Theft in the First Degree by the Lincoln County Circuit Court sitting without a jury. The convictions each "constitute the conviction of a felony under and within the meaning of ORS 9.480(2)."

(2)    The Lincoln County Circuit Court entered a final judgment of conviction for the crime of Theft in the First Degree as a Class A Misdemeanor and sentenced the accused "as for a misdemeanor." The conviction constitutes a conviction of a misdemeanor involving moral turpitude under and within the meaning of ORS 9.480(2).

(3)    The accused with intent to injure and defraud falsely altered and uttered a certificate of title to a boat trailer knowing it to be forged. Further, as a part of the same transaction the accused committed theft of Denise K. Carstens' joint ownership in said boat trailer of the total value of $200 or more. The aforesaid conduct was unethical and in violation of DR 1-102(A)(3) and (4).

(4)    The fourth cause of complaint is the same as the third cause, except that the subject matter is the boat and the certificate of title to it.

(5)    The accused with intent to injure and defraud falsely altered and uttered a certificate of title to a 1976 Ford pickup knowing it to be forged. As a part of the same transaction the accused committed theft of property of a value of $200 or more by selling to John Chasteen, Jr. a 1976 Ford pickup truck without disclosing to Chasteen an adverse claim. Further, the accused committed a theft of Denise K. Carstens' joint ownership in said Ford pickup of a total value of $200 or

more. The aforesaid conduct was unethical and in violation of DR 1-102(A)(3) and (4).

(6) This cause realleges the gravamen of the first, third, fourth and fifth causes of complaint. The aforesaid conduct and course of conduct of the accused in the aggregate "was and is detrimental and prejudicial to the honor, integrity and standing of the profession of lawyer, the practice of law and the administration of justice of this state, and was and is subversive to the public interest; it constituted and constitutes conduct rendering the Accused unfit to practice law" and violates DR 1-102(A)(3), (4), (5) and (6).

Former ORS 9.480(2) (now ORS 9.527(2)) provides:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"* * * * *

"(2) The member has been convicted in any jurisdiction of an offense which is a misdemeanor involving moral turpitude or a felony under the laws of this state, * * * in any of which cases the record of the conviction shall be conclusive evidence."

The Disciplinary Rule relied upon by the Oregon State Bar is as follows:

"DR 1-102 Misconduct.

"(A) A lawyer shall not:

"* * * * *

"(3) Engage in illegal conduct involving moral turpitude.

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

"(5) Engage in conduct that is prejudicial to the administration of justice.

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

The Bar in its brief in this court frankly states that it does not seek triple punishment of the accused and that it presents the first, second and fifth causes of complaint as alternative grounds of punishment.

The first, second, and fifth causes of complaint all arise from the accused's signing his wife's name to the certificate of title for the 1976 Ford pickup truck. The Bar in this court has not pressed its first cause alleging that the accused was convicted of two felonies.[6] The Bar has never said so, but it is probable that it pleaded the fifth cause as a "back up cause." At the time the complaint was filed in this matter in August, 1982, the Bar could have reasoned that if the Court of Appeals reversed the conviction, then the first and second causes would fall. However, it could then proceed before the Trial Board under the fifth cause on the underlying facts claiming not a conviction of crimes, but a violation of DR 1-102 (A)(3) and (4). As it turned out the hearing before the Trial Board was held in January, 1983 and the Court of Appeals affirmed the conviction in April, 1983. Under the circumstances we agree with the Bar that we should consider only one of the three causes. We will examine the second cause of complaint.

The trial court merged the accused's forgery conviction with the theft conviction and declared it to be a Class A Misdemeanor. We are not permitted to look behind the conviction to determine guilt or innocence. Former ORS 9.480(2) provides that the record of the conviction is conclusive evidence.

Only one question remains from the second cause: Does the misdemeanor conviction for theft involve moral turpitude? The Trial Board answered the question "Yes," and the Disciplinary Review Board answered it "No." We hold that a misdemeanor conviction for the crime of theft is a conviction involving moral turpitude. Therefore, we find the accused guilty of the second cause of complaint.

Next we consider the Bar's third and fourth causes, wherein it is alleged that the accused with intent to injure and defraud falsely altered and uttered the certificates of title to

---

[6] The Bar is saying that the accused cannot be guilty of both the first and second causes. The trial court merged the felony forgery conviction with the felony theft conviction and then declared it to be a misdemeanor. In its brief in this court the Bar, citing ORS 161.705, "concedes that the authority" is probably against it. We think that the Bar also intended to cite ORS 161.585 which in effect provides that when the trial court grants probation and declares the offense to be a misdemeanor, that "the crime is a misdemeanor for all purposes."

the boat trailer and the boat. Each cause contains a further allegation to the effect that the accused, as a part of the same transaction, committed a theft of Denise K. Carstens' joint ownership in the personal property.

■ The fact that the Circuit Court found the accused not guilty of the alleged crimes that resulted from the *same* incidents which are the subject matter of the third and fourth causes does not end the matter. In a disciplinary case the standard of proof is reduced to clear and convincing evidence. *In re Thorp,* 296 Or 666, 679 P2d 857 (1984). The accused is not charged with a crime, but the violation of a disciplinary rule:

"DR 1-102 Misconduct.

"(A)  A lawyer shall not:

"* * * * *

"(3)  Engage in illegal conduct involving moral turpitude.

"(4)  Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

As part of his affirmative defense to the Bar's complaint, the accused alleged:

"The said Denise K. Carstens frequently signed the name of * * * Kurt Carstens to various legal documents during the course of their marriage and the parties, by mutual agreement, had signed each other's name when it was convenient to do so."

The transcript in the criminal trial was made a part of the record in this case. In the criminal case the parties stipulated that although a petition for dissolution was pending in February, 1981, when the accused signed his wife's name to the certificates of title for the boat trailer and the boat, a reconciliation was in progress and they were living together as man and wife. The accused testified before the Trial Board that because of a course of prior conduct, he had authority to sign his wife's name to the documents. Denise Carstens in effect denied both the prior course of conduct and the authority.

■ We find from our independent review of the evidence that the accused had implied authority to sign his wife's name

to the certificates of title to the boat trailer and the boat. We find the accused more credible than his former wife. There are three cancelled checks in evidence which show that the wife during the marriage signed the accused's name as payee. That evidence tends to corroborate the accused's testimony as to a prior course of conduct. The transfer of the trailer and the boat to the professional corporation had been discussed by the parties as a means of saving income tax. Any savings to the accused was also for the benefit of the wife. The property had not been transferred to a stranger. It was still in the control of the accused and a dissolution court in the future could reach it by requiring the accused to convey. The wife found the new titles in the name of the professional corporation in a kitchen drawer in the residence nine months after they had been transferred—not the place to hide a valuable document from one's spouse.

■　　To help us determine the credibility of witnesses we consider the findings of the Trial Board. *In re Jordan,* 295 Or 142, 159, 665 P2d 341 (1983). This court in *In re Moynihan,* 166 Or 200, 221, 111 P2d 96 (1941) said:

> "The trial committee that heard the witnesses 'is better qualified to determine disputed questions of facts than we who read the cold printed record', and while its determination 'is not conclusive it must, in the very nature of things, be entitled to respect.' "

Here the Trial Board had this to say about the accused's former wife:

> "The trial board is unanimous in finding from the demeanor of Mrs. Carstens when testifying at the disciplinary hearing, from her answers in her deposition * * * and from the finding of [the trial judge] in deciding the dissolution of marriage suit, that Mrs. Carstens was motivated by malice against Kurt Carstens in making the charges which led to his indictment and conviction. That attitude does not disqualify Denise Carstens from making her charges to the Oregon State Bar. Mrs. Carstens' demeanor does, however, diminish her credibility with the trial board."[7]

---

[7] This Disciplinary Review Board in its opinion said:

"The wife was very vindictive. * * *. It can be inferred that the prosecution [of the accused in the criminal court] was initiated by Mrs. Carstens' motive to bring pressure for a favorable divorce settlement."

We agree with the Trial Board as to the credibility of the accused's former wife.

We find the accused not guilty of the third and fourth causes of complaint. The sixth cause of complaint realleges the gravamen of the first, third, fourth and fifth causes of complaint and claims that the course of conduct set out therein in the aggregate is in violation of DR 1-102(A)(3), (4), (5), and (6). As we have found it unnecessary to consider the first and fifth causes and found the accused not guilty of the third and fourth causes, there is nothing "in the aggregate" upon which to base the charge. No course of conduct was established. The sixth cause of complaint is dismissed.

By way of summary, we find the accused guilty only of the second cause of complaint—the conviction of a misdemeanor involving moral turpitude.

What is a proper sanction? What this court said in 1907 in the case of *Ex parte Tanner,* 49 Or 31, 36, 88 P 301 (1907), is still appropriate. We in effect said: Proceedings for the discipline of an attorney are not to punish the attorney for the commission of a crime. That matter is left to the criminal courts. The objects of the proceedings here are to uphold the dignity and respect of the profession, protect the courts, preserve the administration of justice and protect clients.

Although we cannot look behind the conviction to reexamine the accused's guilt or innocence, we can consider the facts and circumstances of the incident to determine a proper sanction. There are factors that weigh in favor of the accused. The accused called his lawyer about the sale of the Ford pickup truck and placed the $4,000 in a separate bank account. As soon as the accused's wife's complaint became known to the accused, he notified Chasteen that he would save him harmless from any loss. The accused did in fact pay Chasteen his loss of wages for attending the criminal trial.

The accused made a serious mistake in judgment by signing his wife's name to the certificate of title to the truck. If he had reflected upon the matter he would have realized that any implied authority he previously had to sign his wife's name must have been revoked when the reconciliation failed. We find that the accused would not have committed this rash and impulsive act except for the dissolution turmoil. Even

though the accused's wife worked only four blocks from his office, it may have been that he simply did not want to face the "hassle" of talking to her. According to his testimony, the following day she took occasion to degrade him publicly in a grocery store about another matter. It could be argued that even a law degree will not prevent some people from using poor judgment when they are parties to a dissolution suit.

Many lay and professional people testified before the Trial Board as to the accused's good character and reputation. We find that the act for which the accused was found guilty is unlikely to recur. We conclude that the public will be protected if the accused receives a public reprimand. It is so ordered.

If we thought that there was any possibility that the accused would repeat this act or advise a client to do a similar act, we would not hesitate to disbar him.

This opinion shall serve as a public reprimand. The Oregon State Bar is awarded its actual costs and disbursements.