## In re Complaint as to the Conduct of
# KENNETH M. MONTGOMERY,
### *Accused.*

### (OSB 82-10; SC S30677)

687 P2d 157

Joe D. Bailey, of Landis, Aebi, Bailey & Mercer, P.C., Portland, argued the cause and filed the brief for the accused.

Anthony A. Buccino, of Buccino & Uffelman, P.C., Portland, argued the cause and filed the brief for the Oregon State Bar.

## PER CURIAM

In this disciplinary proceeding, the accused, Kenneth M. Montgomery, was found by the Trial Board and the Disciplinary Review Board to have violated DR 5-104(A) (limiting business relations with a client). We review the record *de novo* and find:

The accused has been an attorney in Oregon since 1976 and has practiced primarily in the field of real estate transactions. In 1973 or 1974, the accused met Mr. Hal Broughton on a social basis. After the accused was admitted to practice in Oregon, he began representing Broughton.

Broughton, a graduate of Oregon State University and University of California-Berkeley, had a substantial amount of inherited money to invest. He was involved in many real estate transactions but always under the guidance of a broker or a lawyer. Although Broughton had been involved in a great number of real estate transactions, he was naive and trusting and had a poor track record in his prior investments.

In 1979, Broughton owned an apartment building in Eugene he wanted to sell. After a long series of discussions, the accused and Broughton agreed that the accused would purchase the building. The accused prepared all the legal documents involved in the transaction. Because of their existing attorney-client relationship and long-standing friendship, Broughton relied upon the accused for legal expertise and judgment regarding this transaction.

Broughton and the accused agreed that the apartment house would be sold for $320,000. At the time of the sale, the property had a $145,000 mortgage outstanding. The terms of the transaction provided that Broughton transfer his $175,000 equity to the accused in exchange for $11,500 cash plus a series of unsecured promissory notes totalling approximately $163,500. One of the promissory notes for the sum of $105,000 was due six months from the date of the transaction and was payable either "in cash or 7,500 shares of Greater Pacific Bank stock." The Greater Pacific Bank was a recently established bank and its shares were privately traded. At the

time this transaction was entered, the shares had an approximate value of $105,000.[1] The agreement also contained a paragraph by which Broughton agreed that his interest "shall be subordinated to Purchaser's mortgage or deed of trust which Purchaser shall be allowed to place upon the property." The accused then obtained a loan from Old National Financial Services for $193,000. Broughton's interest was subordinated to Old National's second mortgage on the property. The net effect of the transactions was to create a substantial risk that Broughton would not receive full payment of the agreed sales price for his apartment.

The accused testified that he believed, but was not certain, he had advised Broughton to obtain independent legal counsel before entering into the agreement to sell and finance the sale of the apartment. Broughton testified he believed, but was not certain, he had not been told to obtain independent legal advice. Broughton did not seek independent counsel before entering into the transaction.

To compound matters, the accused did not explain to Broughton that a conflict existed as to the following aspects of this transaction. Broughton was not aware and the accused did not disclose (1) that the transaction called for Broughton to relinquish any meaningful security interest in the apartment building; (2) the hazards of accepting unsecured promissory notes; (3) the details of accused's financial condition; or (4) the need to determine the financial position of Greater Pacific Bank and the consequences to Broughton if the bank's stock decreased in value or became unmarketable.

The accused was charged with violating DR 5-104(A):

"Limiting Business Relations with a Client.

    (A)    A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

It is clear that the accused and Broughton entered into a business transaction in which they had differing interests and Broughton expected the accused to exercise the

---

[1] By the time the note came due, the stock had substantially dropped in value.

accused's professional judgment. The issue in this case is whether there was full disclosure to Broughton.

In *In re Montgomery,* 292 Or 796, 643 P2d 338 (1982), we stated that if the advice to seek outside counsel has not been taken, the lawyer must make full disclosure. "[F]ull disclosure would require the type of advice which a prudent lawyer would be expected to give the client if the client consulted the lawyer" with respect to the facts involved in the transaction. 292 Or at 803. The accused argues that the relevant facts in this present case occurred prior to this court's decision in *In re Montgomery, supra,* and therefore the accused was not on notice as to what his obligations were regarding full disclosure. The accused asserts that the definition of full disclosure developed in *Montgomery* in 1982 should not be applied to a transaction which occurred in 1979.

The basic obligation for full disclosure did not change when this court decided *Montgomery.* The accused's argument presupposes that our opinion changed the rule. Full disclosure in 1979 meant the same as full disclosure in 1982 or 1984.

The accused argues that a literal reading of the disciplinary rule would unproductively require a lawyer to state the obvious. He contends that full disclosure should vary with the circumstances of the transaction and sophistication of the client. We need not discuss whether full disclosure varies with sophistication of the client because the client here was naive and trusting. *See, In re Thorp,* 296 Or 666, 679 P2d 857 (1984). Full disclosure, at minimum in this case, required the accused advise Broughton of the following: (1) the accused and Broughton had a direct conflict of interest; (2) Broughton should seek and obtain independent legal advice; (3) the transaction called for Broughton to relinquish any meaningful security interest in the apartment building; (4) the hazards of accepting unsecured promissory notes; (5) the details of accused's financial condition; and (6) the need to determine the financial position of Greater Pacific Bank and the consequences to Broughton if the bank's stock decreased in value or became unmarketable.

The accused has violated DR 5-104(A) and is suspended from the practice of law for seven months from the

effective date of this decision. *See* ORAP 11.03. The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).