Argued and submitted January 31, case dismissed March 19, 1985

In re Complaint as to the Conduct of

# KENNETH A. HOLMES,
*Accused.*

## (OSB 82-92; SC S30852)

697 P2d 191

James M. Brown, Salem, argued the cause and filed the brief for the accused.

Deborah L. Sather, Portland, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

This is a disciplinary proceeding by the Oregon State Bar charging the accused, a Salem lawyer, with having a conflict of interest under DR 5-105 when the accused represented multiple clients in a consolidated lien foreclosure case.

The Disciplinary Review Board sustained without dissent the recommendation of the Trial Board that the charges against the accused be dismissed. The Trial Board found no actual conflict of interest among the accused's clients at the time of his representation. The Trial Board found that the accused could adequately represent the interests of each client, each client having consented to the representation by the accused after the accused had fully disclosed to them the possible effect of his representation. Based on our examination of the record, we agree with that finding and the recommendation.

### FACTS

In September and December of 1974, two subcontractors, North Santiam Sand & Gravel (North Santiam) and Barnes Survey & Engineering, Inc. (Barnes), filed suits to foreclose mechanic's liens on a subdivision being developed by Armor Development, Inc. (Armor). The two separate actions, which were later consolidated, were captioned as follows:

"NORTH SANTIAM SAND & GRAVEL, INC., an Oregon corporation,

Plaintiff,

vs.        [No. 86787]

ARMOR DEVELOPMENT, INC., an Oregon corporation, JUDCO, INC., a Washington corporation; RUTLEDGE HOMES, INC., an Oregon corporation; COAST MORTGAGE CO., a Washington corporation; MARCO ENTERPRISES, INC., a Washington corporation; GEORGE N. HYBERTSEN; GLENN WILLIAMS; JOSEPH C. RENAULT and IRENE T. RENAULT, husband and wife; FIRST NATIONAL BANK OF OREGON, a national banking association; NORTH SANTIAM PAVING CO., an Oregon corporation; BARNES SURVEYING AND ENGINEERING, INC., an Oregon Corporation; GORDON HOBBS; ALTO E. SULLIVAN; STATE OF OREGON through John Lobdell, Director of Department of Revenue; and THE

UNITED STATES OF AMERICA,

Defendants."

---

"BARNES SURVEYING & ENGINEERING, INC.,

Plaintiff,

vs.    [No. 88030]

ARMOR DEVELOPMENT, INC., an Oregon Corporation; GLENN WILLIAMS, JUDCO, INC., a Washington corporation; NORTH SANTIAM SAND & GRAVEL, INC., An Oregon corporation; ALTO E. SULLIVAN; FIRST NATION [sic] BANK OF OREGON, an Oregon corporation; RUTLEDGE HOMES, INC., an Oregon corporation; NORTH SANTIAM PAVING, INC., an Oregon corporation; STATE OF OREGON, THROUGH JOHN LOBDELL, Director of Department of Revenue; THE UNITED STATES OF AMERICAN [sic],

Defendants."

The alleged improper multiple representation by the accused occurred in the course of these two foreclosure actions during which the accused represented Armor, Barnes, and Joseph and Irene Renault (Renaults). A classic example of a lawyer representing multiple clients with conflicting interests is manifested by the court records in these cases:

1. The accused accepted service on behalf of defendants Renault in Case No. 86787; the accused associated as counsel for plaintiff Barnes on Case No. 88030 and then on behalf of Armor, Barnes, and the Renaults moved for the consolidation of Case Nos. 86787 and 88030.

2. While attorney of record for plaintiff Barnes, the accused accepted service of process for defendant Armor in Case Nos. 86787 and 88030.

3. The accused filed an Answer, Counterclaim and Cross-claim on behalf of the Renaults in Case No. 86787 seeking judgment against Armor and asserting that the Renault lien was superior to Armor's interests.

4. In consolidated case Nos. 86787 and 88030, the accused filed an Amended Complaint on behalf of Barnes for judgment against Armor for $3,074.69 plus interest, costs and attorney fees and for a declaration that the Barnes lien was superior to the Renault lien.

5. In the consolidated cases, on behalf of the Renaults, the accused filed a supplemental answer alleging that the Renault lien was superior to the Barnes lien and to recover a judgment against Armor for $7,200 plus interest, costs and attorney fees.

6. In the consolidated cases, on behalf of Barnes, the accused filed an answer asking that the Renaults' cross-claim be dismissed.

### Armor

The accused represented Armor as corporate counsel and also represented Leonce Lambert, Armor's president. In July 1973, the principals of Armor, Don Atkinson and Leonce Lambert, agreed to liquidate the corporation and divide the remaining assets. In June 1974, before the lien foreclosure actions were commenced by North Santiam and Barnes, Armor conveyed by deed all of its interest in the subdivision to Judco, Inc. (Judco). Attorneys for North Santiam and Judco and counsel for the Bar agree that when the lien foreclosure actions were filed Armor had no interest in the subject real property. Ultimately Armor was dissolved involuntarily by the Corporation Commissioner on December 11, 1975.

Although Armor did not "appear" in either of the two foreclosure actions, the accused did accept service on behalf of Armor in the North Santiam case. The record does not disclose in what capacity he accepted service.

We find that at the time the foreclosure actions were filed Armor was in fact defunct.

### Barnes and Renaults

Before the filing of the two lien foreclosure actions by North Santiam and Barnes, the accused also had represented Barnes. When Barnes consulted the accused for representation in the lien foreclosure action against Armor, the accused declined and referred Barnes to attorney Bednarz for representation.

On January 13, 1975, the accused accepted service on behalf of defendants Renaults as their attorney in the North Santiam case. Soon thereafter the accused agreed to step back in as attorney for Barnes after discussions between both Barnes and the Renaults revealed no desire on behalf of either

lienholder to assert their rights against one another or against Armor through litigation. Both Barnes and the Renaults also expressed a strong desire to minimize their legal fees.

On January 29, 1975, the accused filed an answer, counterclaim and cross-claim on behalf of the Renaults in which the Renaults sought a personal judgment against Armor. The Renaults claimed lien rights in the subdivision superior to Barnes.

On February 4, 1975, the court consolidated the two lien foreclosure cases upon the motion of the accused on behalf of his clients Armor, Barnes and the Renaults. On February 12, 1975, the court signed an order allowing the accused to become co-counsel with Bednarz for Barnes. Two days later, on February 14, 1975, the accused filed an amended complaint on behalf of Barnes seeking a judgment against Armor for the principal amount of the Barnes lien. Additionally, the amended complaint sought to have the Barnes' lien declared superior to the Renaults' lien and the real property interests of Armor and the Renaults foreclosed. On the same day, February 14, 1975, the accused filed a supplemental answer, counterclaim and cross-claim on behalf of the Renaults denying the allegations of Barnes' amended complaint filed by the accused on the same day. The accused then filed an answer on behalf of Barnes denying, *inter alia,* the allegations of the Renaults' counterclaim and cross-claim filed by the accused. As previously summarized, these 10-year-old pleadings obviously reveal a conflict of interest, but they do not reveal the background of the case or the disclosures made by the accused to the clients in respect to these conflicts.

Judco, the record title owner of the subdivision property, was not challenging the lien claims of Barnes and the Renaults. Both lien claims were eventually paid by Judco through the negotiating efforts of the accused to the satisfaction of the lienholders. Both Barnes and the Renaults acknowledged that they knew at the time of the foreclosure proceedings that the accused had a conflict of interest in that he was representing three separate parties with adverse interests. Nevertheless, Barnes and the Renaults each consented to the continuation of their representation by the accused. A

major consideration for Barnes and the Renaults is that they had no desire to enter into litigation and wanted to minimize legal fees.

The Trial Board found that the accused was a credible witness when he testified that he had advised both Barnes and the Renaults continuously that he would represent them only if he could obtain a negotiated settlement satisfactory to them. The accused told Barnes and the Renaults that if the matter was not settled and could actually go to trial, he would have an irreconcilable conflict of interest and would be unable to continue to represent them. Both Barnes and the Renaults understood the accused's role and not only desired that the accused continue in his dual representation but expressly consented to it. Neither Barnes nor the Renaults displayed any dissatisfaction with the settlement of their lien claims obtained through the negotiating efforts of the accused. Furthermore, none of the several attorneys involved in the foreclosure proceedings voiced any complaints about the actions of the accused. In reviewing the record before us we find no testimony given by anyone which would sustain the charge against the accused.

Armor had relinquished all its rights in the property to Judco. Armor's name in the pleadings was meaningless in the sense that Armor was considered by all the parties involved in the foreclosure proceedings as no longer being a viable entity, being completely insolvent and defunct. Armor never "appeared" in either case.

## ANALYSIS

DR 5-105 of the Code of Professional Responsibility provides in pertinent part:

"Refusing to Accept or Continue Employment if the Interest of Another Client May Impair the Independent Professional Judgment of the Lawyer.

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"(B) A lawyer shall not continue employment if the exercise of his independent professional judgment in behalf of

a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C)  In the situations covered by DR 5-105 (A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

The issue in this case is whether the conduct of the accused comes within the exception of DR 5-105(C). As we stated in *In re Holmes,* 290 Or 173, 179, 619 P2d 1284 (1980),[1] there are two requirements that must be satisfied in order for conduct by an attorney who represents "multiple clients" to come within the exception of DR 5-105(C):

"(1)  That both clients have not only consented that he do so, but that before giving such consent there must have been a 'full disclosure' by the attorney to both clients of 'the possible effect of such representation on the exercise of his independent professional judgment on behalf of each,' and

"(2)  That even when both clients have given consent after such a full disclosure, the attorney may nevertheless not proceed to undertake to represent both of them unless it is 'obvious that he can adequately represent the interest of each.' " (Footnote omitted.)

In the present case, David Bascue, the owner of Barnes during the foreclosure proceedings, testified by way of stipulated affidavit that the accused was conscientious in routinely identifying any conflict of interest in his representation of Bascue himself or of his business, Barnes Surveying & Engineering, Inc.:

"I was the owner of Barnes Surveying & Engineering, Inc. (Barnes Surveying) a corporation, from 1971 to December 1, 1977. During that time, Barnes Surveying performed engineering and surveying services for Armor Development in developing its subdivision near Jefferson, Oregon.

"Kenneth A. Holmes represented the interests of Barnes Surveying in a number of matters. During the time that he served as our attorney, Mr. Holmes routinely informed me of

---

[1] This 1980 case involved the same accused, but dealt with facts which occurred subsequent to those in the present case.

any circumstance or condition that created any conflict of interest in his representation of me or my business. I specifically recall at least one occasion when he told me that he could not represent us because he had a conflict of interest."

Mr. Renault died before the initiation of these disciplinary proceedings. Mrs. Renault, however, did personally testify at the Trial Board hearing. Mrs. Renault is an elderly lady who is not sophisticated in business or legal matters. Her memory of the foreclosure proceedings was diminished by the passage of time and she could not locate any files or records concerning the foreclosure proceedings. The Trial Board found her to be a credible witness when she expressed her best understanding and recollection that full disclosure had been made to her by the accused. Both Bascue and Mrs. Renault expressed full satisfaction with the accused's representation and ultimate settlement of their claims.

■ The Bar's only witness in the entire proceeding was the accused. The Trial Board found that the accused credibly testified that both Mr. Bascue and the Renaults were specifically informed of the nature and extent of the conflict and, with full knowledge of the nature and extent of such conflict, specifically consented to the representation. As far as Armor is concerned, we agree with the Trial Board's determination that due to Armor's insolvency and lack of any interest in the subdivision, the accused was not required to make a full disclosure to Armor. Such an act to a totally defunct corporation would have been useless.

■ We concur with the findings of the Trial Board and find that the accused fully disclosed to Barnes and the Renaults and received their consent for his continued representation of their interests.

We also agree with the findings of the Trial Board and hold that the accused could adequately represent the interests of his multiple clients in his efforts to negotiate a settlement. Although the pleadings filed by the accused expose a dispute between Barnes and the Renaults, there never was any actual dispute between them. Barnes had a claim for work performed for the subdivision. The Renaults' claim was based on a promissory note secured by a mortgage on the subdivision. The accused's objective in representing Barnes and the Renaults was to press North Santiam and Judco to pay off the

liens of Barnes and the Renaults since they were clearly prior to the interests of North Santiam and Judco. This he accomplished.

The Bar contends that:

"While DR 5-105(C) allows representation of multiple clients in certain cases if there has been full disclosure and client consent, DR 5-105 does not permit an attorney to represent multiple clients when their interests are in direct conflict and they seek relief directly from each other. Such representation is not permissible, even if the Accused establishes that he intended to withdraw if he could not negotiate a settlement prior to trial. *See In re Odman,* [297 Or 744, 687 P2d 153 (1984)]. [T]he Court found continued representation improper when the attorney should have known that negotiations or settlements of the pending liens could affect another client's recovery."

The Bar's reliance upon *In re Odman,* 297 Or 744, 687 P2d 153 (1984), is misplaced. In *Odman,* the accused was acting as attorney for an estate and associated with a second lawyer who was then acting as a third person's attorney in settling that person's security interest with the estate. We found that Odman should have known that any negotiations or settlement of the pending liens could affect the amount of that claimant's recovery. Under those circumstances, we found that the accused did not comply with the requirements of DR 5-105(C) for full disclosure and consent. 297 Or at 749. The obvious distinction between *Odman* and the case now presented is that the accused here represented clients with claims against real property for the purpose of effecting settlement with third persons. The uncontradicted testimony before the Trial Board was that the accused represented his clients after full disclosure, with their consent, for the purpose of effecting settlement and with the understanding that he would not represent them if settlement was not achieved.

The issues of full disclosure and consent presented in this case are essentially factual. However, the accuracy of the record in this case, including personal recollections and files regarding the matter, has been seriously eroded by the passage of time. Both Leonce Lambert, principal owner of Armor, and Mr. Renault died before trial of this disciplinary matter. The Bar argues that it can simply rely on the trial court records for

its case against the accused. We are not so persuaded. Ten-year-old pleadings are of dubious value in resolving the factual issues of disclosure and consent.

The accused asserts laches as an affirmative defense. Neither the Trial Board nor the Disciplinary Review Board had to pass on the issue in view of their recommendation of dismissal. Nor do we, because based on the record before us we are satisfied that the accused did not violate DR 5-105. The Bar has failed to sustain its burden of proof of clear and convincing evidence against the accused. Had the Bar brought a more timely action, there might have been more evidence for it to make its case against the accused.

The case against the accused is dismissed. Costs to accused.