[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: RESPONDENT'S MOTION TO APPEAL ORDERSOF THE FAMILY SUPPORT MAGISTRATE
This memorandum of decision addresses the respondent's December 1, 1994 petition to appeal rulings made by the family support magistrate (I. Forman, FSM) on September 29, 1994 and November 17, 1994 in the course of hearing a paternity action. The respondent claims that the magistrate's acceptance of the petitioner's responses to interrogatories propounded by the state, acting on her behalf, was procedurally improper pursuant to § 46b-197, and that the introduction of this evidence violated his due process rights. The respondent further claims that the court erred in denying his motion to open the judgment of paternity rendered on September 29, 1994. Finding jurisdiction over the matter, the court grants the respondent's petition to appeal, and considers the merits of the appeal as presented through the statement of issues set forth in the respondent's Brief submitted under date of April 13, 1995.[1] The court finds both issues in favor of the petitioner, and affirms the rulings of the family support magistrate.
The record reveals the following facts, relevant to this appeal. In August 1993, the State of Kansas instituted paternity CT Page 4004 proceedings against the respondent on behalf of the petitioner, an IV-D, AFDC recipient. A verified Uniform Reciprocal Enforcement Support Act (URESA) petition was forwarded to the State of Connecticut.[2] Therein the petitioner maintained that the respondent was the father of the minor child, Ivory L. Hardin, born to Eloyce Hardin on September 22, 1990.
The respondent was served with a summons to appear in court on November 4, 1993 to answer the petitioner's claim that he should provide support for the minor child. After a continuance was granted, the respondent denied paternity on December 16, 1993. He requested that DNA testing be done on all three parties. The results of the tests were received on April 6, 1994 and indicated a 99.99% probability of paternity. On May 5, 1994, the respondent requested a trial on the issue of paternity. Trial was originally scheduled for June 23, 1994. In response to his request for a continuance to hire an expert to refute the DNA test results, the defendant obtained a new trial date of September 29, 1994.
On that date, neither the petitioner nor the respondent appeared to testify at trial. The petitioner was represented by the state pursuant to Conn. Gen. Stat. § 46b-186,[3] and the defendant was represented by counsel in attendance. The magistrate heard testimony from Richard Julius, a Support Enforcement officer and Dr. Clifton Harris of Roche Biomedical Laboratories, in support of the petitioner's claim that the respondent was the father of the minor child. The magistrate accepted the DNA testing results. The state also offered into evidence the petitioner's written responses to interrogatories that had been posed by the state: the magistrate accepted this evidence over objection from the respondent.[4] Based on the evidence as presented, the magistrate entered a judgment of paternity on September 29, 1994, finding that the respondent is the father of Ivory Hardin. The magistrate entered a temporary current support order of $25 per week and continued the matter as to the issue of support to November 3, 1994.
On October 11, 1994, the respondent filed a motion to open the judgment of paternity. This motion was heard and denied by the magistrate court on November 17, 1994. This appeal followed.[5]
 I.
CT Page 4005
Conn. Gen. Stat. § 46b-231 (n)(7) provides that the superior court may affirm the decision of a family support magistrate, remand it for further proceedings, or reverse or remand or modify the decision. The superior court may reverse or modify the decision if "substantial rights of the respondent have been prejudiced because the decision of the family support magistrate is: (A) in violation of constitutional or statutory provisions; (B) in excess of the statutory authority of the family support magistrate; (C) made upon unlawful procedure; (D) affected by other error of law; (E) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (F) arbitrary and capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion."
The respondent raises three claims on appeal. He first submits that the magistrate erred in allowing the petitioner's responses to the state's interrogatories to be accepted as evidence, because such interrogatories were procedurally improper under Conn. Gen. Stat. § 46b-197.[6] He further claims that admission of this evidence violated his due process rights because the interrogatory responses were served on him during the hearing, so that he was denied the opportunity to cross examine the petitioner by any means. Thereby, the respondent claims that the magistrate's acceptance of this evidence violated his constitutional rights to due process through a fair hearing.
Section 46b-197 details the protocol for URESA proceedings, and codifies the respondent's right to cross examination of the petitioner.[7] The statute clearly contemplates that the respondent may choose to serve the petitioner with interrogatories, and establishes procedures for this practice. The court agrees with the respondent's contention that § 46b-197 does not specifically establish a procedure whereby the state, acting on behalf of the petitioner, is enabled to serve her with interrogatories, and to present the resulting responses in court, as occurred with Exhibit D. As such a procedure is not proscribed by the statute, however, the court is called upon to examine the effect, if any such interrogatory responses may have had on the process of this hearing.[8]
The court is not persuaded that the respondent's due process rights were effectively violated by the introduction of Exhibit D at the magistrate's hearing on September 24, 1994. Counsel for the respondent had not requested a continuance upon the absence CT Page 4006 of his client at the commencement of the hearing, nor at any time after the interrogatory responses were placed at issue. (Transcript 9/24/94, p. 2). At trial, the magistrate attempted to remedy any injury the late revelation of the interrogatory responses may have caused for the respondent: the respondent did not I avail himself of the statutory due process protections codified in § 46b-197 even though the magistrate apprised him of this opportunity. (Transcript 9/24/94, pp. 99-100). Although the defendant's counsel had objected to the introduction of Exhibit D, which was presented to him at the hearing, he did not request a continuance to prepare to address this "new" evidence through oral or written cross-examination via the procedures outlined in § 46b-197. In view of the respondent's failure to utilize the saving provisions of § 46b-197 for purposes of enlarging his right to cross-examine the evidence provided through Exhibit D, the magistrate's decision to admit this evidence cannot be found to have caused undue prejudice to the respondent. The magistrate was free to weigh the nature and quality of the evidence produced through Exhibit D, and to consider both its sponsor and the lack of cross-examination propounded against that evidence. The record reflects that evidence from other sources, including the testimony of Harris and the documentation of the DNA studies, was available to serve as the basis for the magistrate's adjudication of paternity. As such, even if the magistrate's decision to allow introduction of Exhibit D violated a rule of law, this decision cannot rise to the level of harmful error Accordingly, the respondent's claims as to the violation of due process are denied
 II.
The respondent also argues that the magistrate erred in denying his motion to open the judgment of paternity. Under our civil rules, a judgment may be opened at any time within four
months of its entry, pursuant to both Practice Book § 326[9] and Practice Book § 377.[10] The respondent claims that Practice Book § 377 governs his motion to open and that the magistrate erred in not finding that the defendant was prevented from fully raising his defenses, as is a requisite to the application of the protections provided through that section. The petitioner argues that § 377 is inapposite, and that § 326 is the relevant provision. This court concurs with the petitioner and holds that the provisions of Practice Book § 326 apply to this matter.[11] Practice Book § 377 deals specifically with judgments rendered upon a finding of default or CT Page 4007 failure to appear. A judgment rendered upon a default or nonsuit thus may be set aside only if the moving party demonstrates that "reasonable cause" or a "good cause of action or defense . . . existed at the time of the rendition of the judgment" and that the movant was prevented by "mistake, accident or other reasonable cause from prosecuting the action or making the defense." Practice Book § 377.
The respondent argues that insofar as § 377 addresses judgments rendered subsequent to a failure to appear, it is applicable to this case because the respondent failed to appear at the trial held on September 29, 1994. (See Appellant's Brief, p. 12) The respondent misconstrues the provision. The defendant had indeed "appeared" in the action within the meaning of P.B. § 377, through his counsel. He had also "appeared" at trial through his counsel's participation in the proceedings. There is no evidence in the record from which this court can conclude that the absence of the defendant at the trial formed any part of the magistrate's basis for finding him to be the father of the minor child. The record does not support finding that the magistrate entered a judgment of default based upon the respondent's failure to attend the hearing on September 29, 1994. The judgment of paternity in this case was rendered not on the basis of the respondent's failure to appear, but after a full and lengthy adjudication of the evidence. Thus, the failure of the defendant to attend the trial does not transform the proceeding into one governed by P.B. § 377.
Instead, Practice Book § 326 governs the issue of opening the magistrate's judgment in this case. Unlike P.B. § 377, P.B. § 326 does not require a showing of both a good defense and a good reason for nonappearance. As P.B. § 326 does not prescribe judicial standards for a motion to open judgment, this court is obligated to determine whether the magistrate's decision was an abuse of discretion. "Courts have an inherent power to open, correct and modify judgments . . . ." (Internal citations omitted) Viglione Sheet Metal Co. v. Sakonchick, 190 Conn. 707,710 (1983). "A motion to open and vacate a judgment . . . is addressed to the court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of discretion. In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action." (Internal citations omitted.) Acheson v. White, 195 Conn. 211,214-215 (1985). "While [a motion to open a judgment] should not CT Page 4008 be readily granted nor without strong reasons, it ought to be when there appears cause for which the court acting reasonably would feel bound in duty so to do. McCulloch v. Pittsburgh PlateGlass, 107 Conn. 164, 167, 140 A. 114 (1927); Wildman v.Wildman, 72 Conn. 262, 270, 44 A. 224 (1899). Ideal FinancingAssn. v. LaBonte, 120 Conn. 190, 195 180 A. 300 (1935)." (Internal quotation marks omitted.) Viglione Sheet Metal Co. v.Sakonchick, supra, 190 Conn. 710-711.
This court finds that the magistrate considered all the relevant evidence in rendering her decision denying the respondent's motion to open. During the November 17, 1994 hearing, the respondent appeared and testified that he failed to appear in court on September 29, 1994 because he was confused and thought the trial date was September 30, 1994. Appellant's Brief, p. 10. In addition, he testified on that date as to his defenses in the paternity action through reference to the petitioner's "prior relationships, cohabitation and inconsistent statements made by the petitioner about her pregnancy." Appellant's Brief, p. 12. Notwithstanding the fact that P.B. § 377 is inapplicable, the magistrate did make a finding that there was no reasonable basis for the respondent's non-appearance on September 29, 1994. (Transcript 11/17/94, p. 19.) It is clear from the record that the magistrate considered the respondent's testimony and the evidence in rendering her decision on the motion.[12] The magistrate found that the respondent had been duly served, that he had adequate and sufficient notice of the date of the trial, and that he was represented by counsel. The court carefully considered the respondent's asserted defenses, which were outweighed by the compelling nature of the DNA results. "A motion to open in order to permit a party to present further evidence need not be granted where the evidence offered is not likely to affect the verdict." (Internal citations omitted.) Viglione SheetMetal Co. v. Sakonchick, supra, 190 Conn. 712. The magistrate's decision denying the motion to open judgment is clearly supported by the evidence and does not represent an abuse of discretion. Id.
WHEREFORE, the respondent's Petition to Appeal, submitted under date of December 1, 1994, having been granted by the court, the respondent's Appeal from the rulings of the family support magistrate, entered September 29, 1994 and November 17, 1994, is hereby DENIED, and the court AFFIRMS the rulings of the magistrate issued on these dates. CT Page 4009
BY THE COURT,
N. Rubinow, J.